1

2

3

4

5

6

7

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                       **SAN FRANCISCO DIVISION**

12  J&J SPORTS PRODUCTIONS, INC.              Case No.  11-cv-03713 YGR

13              Plaintiff,                    **REPORT AND RECOMMENDATION TO**
                                              **GRANT MOTION FOR DEFAULT**
14  v.                                        **JUDGMENT**

15  DOROTEO M. BRACAMONTES and                Re: Dkt. No. 17
    MARTIN M. GONZALEZ,
16
            Defendants.
17

18

19        Plaintiff J&J Sports moves for the entry of default judgment under Federal Rule of Civil

20  Procedure 55(b)(2) against defendants Bracamontes and Gonzalez for allegedly intercepting and

21  exhibiting a sports broadcast in violation of the Federal Communications Act.  J&J requests

22  $111,200.00 in damages.  The Court recommends that the District Court grant J&J Sports'

23  motion and enter default judgment against defendants, but that it award only $2,400 in damages

24  to J&J Sports.

25                               **I. BACKGROUND**

26        J&J Sports is a commercial distributor and licensor of sporting events.  Dkt. No. 1,

27  Compl. ¶ 12.  J&J Sports owns the exclusive right to distribute on a nationwide basis a program

28  titled *Fight of the Year: The Rematch! Juan Manuel Marquez v. Juan Diaz* ("the program"),

1   which was televised nationwide on July 31, 2010.  *Id.* ¶ 10.  The program featured a match

2   between Juan Manuel Marquez and Juan Diaz and included "all under-card bouts and fight

3   commentary."  *Id.*; Dkt. No. 17, J&J's Mot. at 1.  J&J Sports encrypted the program and made it

4   available only to commercial establishments to which it licensed the right to "publicly exhibit"

5   the program.  Compl. ¶ 11; J&J's Mot. at 2.  J&J Sports claims to have "expended substantial

6   monies marketing, advertising, promoting, administering, and transmitting the program" to these

7   commercial establishments.  Compl. ¶ 12.

8          Defendants Bracamontes and Gonzalez are owners or operators of Rosy's Fish City, a

9   commercial establishment in San Jose, California.  *Id.* ¶¶ 7-8.  J&J Sports claims that defendants

10  intercepted and exhibited the program without authorization and for commercial gain at Rosy's

11  Fish City.  *Id.* ¶¶ 13-14.  Investigator Gary Gravelyn went to Rosy's Fish City on July 31, 2010,

12  and observed the unlawful exhibition of the program at that establishment.  J&J's Mot., Attach. 3,

13  Gravelyn Decl.  In his affidavit, Gravelyn states that he saw three television sets at Rosy's Fish

14  City on which he watched "the ending between Joel Casamayor and Roberto Guerrero," as well

15  as "a closeup of Guerrero as they announced him as the winner."  *Id.* at 2.  Gravelyn further states

16  that after he watched this "closeup," he saw "several clips of Marquez and Diaz."  *Id.*  Gravelyn

17  claims that he did not see a cable box at Rosy's but states that Rosy's has a satellite dish.  *Id.*

18  Gravelyn conducted three headcounts during his visit and observed forty-nine, fifty, and fifty

19  customers respectively.  *Id.*

20         J&J Sports filed a complaint against Bracamontes and Gonzalez on July 28, 2011, which

21  contains four counts: (1) count one is a violation of the Federal Communications Act, 47 U.S.C. §

22  605; (2) count two is a violation of the Federal Communications Act, 47 U.S.C. § 553; (3) count

23  three is a claim of conversion; and (4) count four is a violation of California's Business and

24  Professions Code §§ 17200-17210.  Compl. ¶¶ 9-37.  J&J Sports served a copy of the complaint

25  on defendants on September 27, 2011.  Dkt. Nos. 5, 6, Proof of Service.  Neither of the

26  defendants filed a response to the complaint.  The clerk entered default as to both defendants on

27  December 19, 2011.  Dkt. No. 13, Entry of Default.

28         J&J moves for the entry of default judgment against defendants under Federal Rule of

Case No. 11-cv-03713 YGR
REPORT AND RECOMMENDATION                    2

1  Civil Procedure 55(b)(2).  J&J Sports claims that because the default entered by the clerk serves

2  as an admission of the factual allegations in the complaint, the only issue to be decided is the

3  amount of damages and costs to be awarded to J&J Sports.  J&J's Mot. at 8.  J&J Sports asks for

4  (1) $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $100,000 in enhanced

5  damages under 47 U.S.C. § 605(e)(3)(C)(ii); and (3) $1,200 in conversion damages.  *Id.*, Attach.

6  2, Riley Decl. ¶ 7.

7      J&J Sports served a copy of the motion on defendants.  J&J's Mot. at 4.   The motion was

8  referred to this Court by District Judge Gonzalez Rogers for a report and recommendation under

9  Federal Rule of Civil Procedure 72(a).  Dkt. No. 15, Order of Reference.

10                          **II. STANDARD OF REVIEW**

11      "[D]efault judgments are generally disfavored.  Whenever it is reasonably possible, cases

12  should be decided upon their merits."  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814

13  (9th Cir. 1985).   "A district court's decision whether to enter a default judgment is a

14  discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).  In determining

15  whether default judgment is appropriate, courts consider the following factors, which are derived

16  from the Ninth Circuit's holding in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986):  (1)

17  the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3)

18  the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of

19  a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7)

20  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the

21  merits.

22                             **III. DISCUSSION**

23  **A.     The Court Has Jurisdiction over this Action**

24      When presented with a motion for default judgment, the court has "an affirmative duty to

25  look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707,

26  712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction over this action under 28

27  U.S.C. § 1331 because the complaint alleges violations of federal law, namely the Federal

28  Communications Act.  Compl. ¶¶ 9-18.  J&J Sports' claims under California law also are properly

1   before this Court under 28 U.S.C. § 1367, because they are so related to J&J Sports' claims under

2   federal law that they form part of the same case or controversy.  The Court may exercise personal

3   jurisdiction over both defendants, as each of them conducts commercial activities in this district,

4   namely, San Jose, California.  *Id.* ¶¶ 7-8.

5   **B.      The *Eitel* Factors Support the Entry of Default Judgment**

6          After considering all of the *Eitel* factors, the Court finds that the entry of default judgment

7   against defendants is appropriate but that J&J Sports' requested damages award is not supported

8   by the factual allegations in the operative complaint.  Each of the *Eitel* factors is considered in

9   turn.

10               **1.      Potential Prejudice to J&J Sports**

11         This factor weighs in favor of entering default judgment against defendants.  First, if the

12  District Court denies this motion, J&J Sports will not have a remedy for the harm it suffered as a

13  result of defendants' alleged acts or the ability to prevent similar acts by defendants in the future.

14  Second,  J&J Sports argues that it has lost and will continue to lose customers as a result of

15  defendants' alleged conduct, because when commercial establishments like Rosy's Fish City

16  offer programming illegally to their patrons at no charge, other establishments are discouraged

17  from paying a licensing fee to J&J Sports.  J&J's Mot. at 21.  Finally, J&J Sports claims to have

18  suffered "severe damage" to its reputation as a result of defendants' conduct; J&J Sports

19  allegedly tells its potential customers that it has full control over the transmission of its

20  programming, but illegal exhibitions of J&J Sports' programming decrease the truthfulness of this

21  assertion.  *Id.* at 21-22.

22               **2.      Merits of J&J Sports' Substantive Claims, Sufficiency of the Complaint, and
                          Possibility of a Dispute Concerning Material Facts**
23
           These three factors, which are interrelated, weigh in favor of entering a default judgment
24
    against defendants, albeit by a narrow margin.
25
           After the clerk enters a defendant's default, a court must take "the well-pleaded factual
26
    allegations" in the complaint "as true."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th
27
    Cir. 2007).  However, the "defendant is not held to admit facts that are not well-pleaded or to
28

Case No. 11-cv-03713 YGR
REPORT AND RECOMMENDATION                          4

1    admit conclusions of law." *Id.*  A fact is not well-pleaded if it is "made indefinite or erroneous by

2    other allegations in the same complaint" or is "contrary to facts of which the court will take

3    judicial notice, or which are not susceptible of proof by legitimate evidence, or which are contrary

4    to uncontroverted material in the file of the case." 10A CHARLES ALAN WRIGHT & ARTHUR R.

5    MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2011).

6            Here, the complaint is sufficiently well-pleaded to support the entry of default judgment

7    against defendants.  Because J&J Sports seeks damages under counts one and three only, only

8    these counts are relevant to the determination of this motion.

9            Count one alleges a violation of 47 U.S.C. §605, which prohibits "receiving . . . any

10   interstate or foreign communication by wire or radio . . . except through authorized channels of

11   transmission or reception."  This statute is applicable here because Gravelyn claims in his

12   affidavit that defendants' establishment has a satellite dish.  To state a claim under § 605, a

13   plaintiff must plead sufficient factual matter to show that a defendant has "(1) intercepted or aided

14   the interception of, and (2) divulged or published, or aided the divulging or publishing of, a

15   communication transmitted by the plaintiff." *California Satellite Sys. v. Seimon*, 767 F.2d 1364,

16   1366 (9th Cir. 1985) (citations and internal quotation marks omitted).   J&J Sports alleges that

17   defendants "did unlawfully intercept . . . and/or exhibit the program at the time of its transmission

18   at their commercial establishment in San Jose, California located at 2882 Story Road, San Jose,

19   California 95127."  Compl. ¶ 13.   These factual allegations are sufficient to state a claim under §

20   605.

21           Count three is a claim of conversion.  To state a claim for conversion under California

22   law, a plaintiff must state sufficient factual matter to show (1) that she owned or had the right

23   possession of the property at issue, (2) that the defendant wrongfully disposed of the property,

24   and (3) that the plaintiff suffered damages. *G.S. Rasmussen & Assocs. Inc. v. Kalitta Flying

25   Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  J&J Sports alleges that it owns the exclusive right

26   to distribute the program, that defendants intercepted and exhibited the program on the date of the

27   program's transmission at their establishment without J&J Sports' authorization, and that it

28   suffered economic harm as a result of defendants' conduct.  Compl. ¶¶ 24-26.  These factual

1    allegations are sufficient to state a claim for conversion under California law.

2            The possibility of a dispute concerning at least one of the material facts that supports each

3    of these two counts exists, however, which in turn calls into question the merits of J&J Sports'

4    substantive claims.  Investigator Gravelyn's statements with respect to the contents of the

5    program he observed at Rosy's Fish City cast doubt on J&J Sports' allegation that the program

6    exhibited by defendants was the one identified in the complaint.  Gravelyn claims to have

7    observed during his visit to Rosy's "the ending between Joel Casamayor and Roberto Guerrero,"

8    as well as "a closeup of Guerrero as they announced him as the winner."  Neither Casamayor nor

9    Guerrero were featured in the program according to the complaint.  Indeed, the complaint alleges

10   that the program at issue featured a boxing match between Juan Manuel Marquez and Juan Diaz.

11           **3.        The Sum of Money at Stake in the Action**

12           Because at least one of the material facts in the complaint is subject to reasonable dispute,

13   as discussed above, the total damages award of $112,000 requested by J&J Sports is unsupported.

14           First, J&J Sports requests $10,000 in statutory damages under 47 U.S.C. §

15   605(e)(3)(C)(i)(II).  That provision allows the aggrieved party to recover actual damages or

16   statutory damages at the court's discretion of no less than $1,000 or more than $10,000 for each

17   violation.  J&J Sports' request for statutory damages is appropriate here, because, as a result of

18   defendants' default, it would be virtually impossible to calculate the actual amount of damages

19   suffered by J&J Sports.  The Court finds that J&J Sports is entitled to $1,200 in statutory

20   damages under § 605, as this is the amount that defendants would have had to pay to purchase a

21   license from J&J Sports to exhibit the program legally.  J&J's Mot. at 20; *see J & J Sports*

22   *Productions, Inc. v. Kim Hung Ho*, No. 5:11-CV-01163-LHK, 2012 WL 146634, at *2 (N.D. Cal.

23   Jan. 18, 2012) (awarding statutory damages under § 605 based on the cost of the program's

24   license).

25           Second, J&J Sports requests $100,000 in enhanced damages under 47 U.S.C. §

26   605(e)(3)(C)(ii).  That provision gives the court discretion to increase the award of damages to

27   the aggrieved party by an amount of no more than $100,000 for each violation in the event that

28   the court finds that the violation was committed willfully and for purposes of direct or indirect

Case No. 11-cv-03713 YGR
REPORT AND RECOMMENDATION                    6

1   commercial advantage.  Here, J&J Sports claims that defendants acted willfully and for their

2   commercial gain.  The Court finds that defendants acted willfully because they could not have

3   exhibited the program legally without paying a licensing fee to J&J Sports, and J&J Sports claims

4   that defendants did not pay them a licensing fee.   The Court also finds, however, that neither the

5   pleadings nor Gravelyn's affidavit establish that defendants' exhibition of the program was for

6   defendants' commercial advantage, as they contain no evidence that defendants made a profit

7   from the exhibition of the program.  Gravelyn claims (1) that the total capacity of Rosy's Fish

8   City is seventy-five people but that he observed only forty-nine or fifty patrons during his visit;

9   (2) that defendants did not require a cover charge to enter Rosy's; (3) and that defendants

10  exhibited the program on three televisions.  Gravelyn Decl. at 2-3.  J&J Sports provides no

11  evidence showing that defendants advertised the program or that they charged a premium for food

12  and drinks on the night they allegedly exhibited the program.  Accordingly, J&J Sports' request

13  for enhanced damages under § 605 is unjustified.  *Cf. G & G Closed Circuit Events, LLC v. Kim*

14  *Hung Ho*, 5:10-CV-05716 EJD, 2011 WL 6217598, at *2 (N.D. Cal. Dec. 14, 2011) (awarding

15  plaintiff $1,000 in enhanced damages under § 605 because the establishment where the program

16  at issue was exhibited had more than eight televisions and defendants were repeat offenders).

17          Finally, J&J Sports requests $1,200 in conversion damages.  Under California Civil Code

18  § 3336, damages for conversion are based on the value of the property at the time of the

19  conversion.  J&J Sports claims that the value of a license to exhibit the program is $1,200.

20  Accordingly, the Court finds that J&J Sports is entitled to recover the $1,200 licensing fee.  *See G*

21  *& G Closed Circuit Events*, 2011 WL 6217598, at *2 (awarding conversion damages in addition

22  to statutory damages under § 605).

23          **4.       Whether Default Was a Result of Excusable Neglect**

24          This factor weighs in favor of entering default judgment against defendants, as defendants

25  did not file a response to the complaint and there is no evidence that their failure to do so was due

26  to excusable neglect.

27          **5.       Strong Policy Favoring Decision on the Merits**

28          This factor weighs against entering default judgment against defendants.

Case No. 11-cv-03713 YGR
REPORT AND RECOMMENDATION                7

1

### IV. CONCLUSION

2          The Court recommends that the District Court grant J&J Sports' motion for entry of

3     default judgment against defendants and that it award to J&J Sports $1,200 in damages under 47

4     U.S.C. § 605(e)(3)(C)(i)(II) and $1,200 in damages under California Civil Code § 3336, for a

5     total of $2,400.  The parties may file objections to this order under Federal Rule of Civil

6     Procedure 72(a) within fourteen days of the date this order is filed.

7          IT IS SO ORDERED.

8     Date: March 15, 2012

      _____
9                                     Nathanael M. Cousins
                                      United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28