# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOROTEO M. BRACAMONTES and MARTIN M. GONZALEZ, <br><br> Defendants. | Case No. 11-cv-03713 YGR (NC) <br><br> **REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 25 |

Plaintiff J & J Sports moves for the entry of default judgment under Federal Rule of Civil Procedure 55(b)(2) against defendants Bracamontes and Gonzalez for allegedly intercepting and exhibiting a sports broadcast in violation of the Federal Communications Act. J & J Sports requests $111,200.00 in damages. The Court recommends that the District Court grant J & J Sports' motion and enter default judgment against defendants, but that it award only $2,400 in damages to J & J Sports.

## I. BACKGROUND

**A.   J & J Sports' Complaint**

J & J Sports is a commercial distributor and licensor of sporting events. Dkt. No. 1, Compl. ¶ 12. J & J Sports owns the exclusive right to distribute on a nationwide basis a program titled *Fight of the Year: The Rematch! Juan Manuel Marquez v. Juan Diaz* ("the

program"), which was televised nationwide on July 31, 2010. *Id.* ¶ 10. The program featured a match between Juan Manuel Marquez and Juan Diaz and included "all under-card bouts and fight commentary." *Id.* J & J Sports encrypted the program and made it available only to commercial establishments to which it licensed the right to "publicly exhibit" the program. Compl. ¶ 11. J & J Sports claims to have "expended substantial monies marketing, advertising, promoting, administering, and transmitting the program" to these commercial establishments. Compl. ¶ 12.

Defendants Bracamontes and Gonzalez are owners or operators of Rosy's Fish City, a commercial establishment in San Jose, California. *Id.* ¶¶ 7-8. J & J Sports claims that defendants intercepted and exhibited the program without authorization and for commercial gain at Rosy's Fish City. *Id.* ¶¶ 13-14. Investigator Gary Gravelyn went to Rosy's Fish City on July 31, 2010, and observed the unlawful exhibition of the program at that establishment. Dkt. No. 17, Ex. 3. In his affidavit, Gravelyn states that he saw three television sets at Rosy's Fish City on which he watched "the ending between Joel Casamayor and Roberto Guerrero," as well as "a closeup of Guerrero as they announced him as the winner." *Id.* at 2. Gravelyn further states that after he watched this "closeup," he saw "several clips of Marquez and Diaz." *Id.* Gravelyn claims that he did not see a cable box at Rosy's but states that Rosy's has a satellite dish. *Id.* Gravelyn conducted three headcounts during his visit and observed forty-nine, fifty, and fifty customers respectively. *Id.*

J & J Sports filed a complaint against Bracamontes and Gonzalez on July 28, 2011, alleging (1) a violation of the Federal Communications Act, 47 U.S.C. § 605; (2) a violation of the Federal Communications Act, 47 U.S.C. § 553; (3) a claim of conversion; and (4) a violation of California's Business and Professions Code §§ 17200-17210. Compl. ¶¶ 9-37. J & J Sports served a copy of the complaint on defendants on September 27, 2011. Dkt. Nos. 5, 6, Proof of Service. Neither of the defendants filed a response to the complaint. The clerk entered default as to both defendants on December 19, 2011. Dkt. No. 13, Entry of Default.

J & J Sports moved for the entry of default judgment against defendants under Federal Rule of Civil Procedure 55(b)(2). J & J Sports claims that because the default entered by the clerk serves as an admission of the factual allegations in the complaint, the only issue to be decided is the amount of damages and costs to be awarded to J & J Sports. Dkt. No. 17 at 8; Dkt. No. 25 at 14. J & J Sports asks for (1) $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $100,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii); and (3) $1,200 in conversion damages. Dkt. No. 25, Ex. 2 ¶ 7. J & J Sports served a copy of the motion on defendants. Dkt. No. 17 at 4.

The motion was referred to this Court by District Judge Gonzalez Rogers for a report and recommendation under Federal Rule of Civil Procedure 72(a). Dkt. No. 15, Order of Reference. This Court recommended that the district court grant the motion for default judgment, but award only $2,400 in damages because J & J Sports' request was unsupported by the facts in the complaint. Dkt. No. 22. Judge Gonzalez Rogers gave J & J Sports leave to amend its motion for default judgment to provide evidence that defendants aired the program. Dkt. No. 24 at 3. Judge Gonzalez Rogers referred J & J Sports' amended motion to this Court for a report and recommendation under Federal Rule of Civil Procedure 72(a). Dkt. No. 26.

## II. STANDARD OF REVIEW

"[D]efault judgments are generally disfavored. Whenever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). "A district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In determining whether default judgment is appropriate, courts consider the following factors, which are derived from the Ninth Circuit's holding in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986): (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules

of Civil Procedure favoring decisions on the merits.

## III. DISCUSSION

Judge Gonzalez Rogers gave J & J Sports leave to amend to put forth evidence of defendants' exhibition of the program. J & J Sports has submitted the affidavit of the company's president in conjunction with its amended motion. Because J & J Sports does not submit new facts that affect the first, third, sixth, or seventh *Eitel* factors, the Court does not address them.[1] Instead, the Court looks to the second, fourth, and fifth *Eitel* factors in considering J & J Sports' amended motion. Applying those factors, the Court again finds that default judgment against defendants is appropriate. Nevertheless, the amount of damages requested by J & J Sports is not supported by the record.

**A.    The Merits of J & J Sports' Substantive Claim and the Possibility of a Dispute of Material Fact**

This Court originally recommended that there was the possibility of a dispute of material fact, which called into question the merits of J & J Sports' substantive claims, because there was no direct evidence to suggest that defendants had exhibited the program at issue. Dkt. No. 22 at 6. The investigator J & J Sports sent to defendants' establishment saw only clips of "the ending between Joel Casamayor and Roberto Guerrero," as well as "a closeup of Guerrero as they announced him as the winner." Neither Casamayor nor Guerrero was featured in the program according to the complaint, which alleges that the program featured a boxing match between Juan Manuel Marquez and Juan Diaz. J & J Sports now submits the declaration of Joseph M. Gagliardi, the president of J & J Sports Productions, Inc., in which Gagliardi avers that the match between Guerrero and Casamayor was the undercard bout that immediately preceded the match between Marquez and Diaz. Dkt. No. 27 ¶ 4. Because J & J Sports has put forth evidence that forecloses the possibility that defendants did not air the program, the Court finds that the second and fifth *Eitel* factors weigh in favor of entering default judgment against the defendants.

---

[1] The Court reiterates its original recommendation and finds that the first, third, and sixth factors weigh in favor of entering default judgment, while the seventh factor weighs against entering default judgment.

**B.    The Sum of Money at Stake in the Action**

Under 47 U.S.C. § 605(e)(3)(C)(i), an aggrieved party may recover actual damages or statutory damages at the court's discretion of no less than $1,000 or more than $10,000 for each violation. J & J Sports' request for statutory damages is appropriate here, because, as a result of defendants' default, it would be impracticable to calculate the actual amount of damages suffered by J & J Sports. The Court finds that J & J Sports is entitled to $1,200 in statutory damages under § 605, as this is the amount that defendants would have had to pay to purchase a license from J & J Sports to exhibit the program legally. Dkt. No. 18 at ¶ 8; Dkt. No. 25 at 24; *see J & J Sports Productions, Inc. v. Kim Hung Ho*, No. 11-cv-01163 LHK, 2012 WL 146634, at *2 (N.D. Cal. Jan. 18, 2012) (awarding statutory damages under § 605 based on the cost of the program's license).

J & J Sports also requests $100,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). That provision gives the court discretion to increase the award of damages to the aggrieved party by an amount of no more than $100,000 for each violation in the event that the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage. Here, J & J Sports claims that defendants acted willfully and for their commercial gain. Gagliardi declares that the program was available only through the purchase of a commercial sublicense from J & J Sports and that defendants did not purchase such a sublicense. Dkt. No. 18 ¶¶ 3, 7. In the absence of a lawful license, the evidence suggests that defendants willfully obtained the program in some way. It is not clear, however, that defendants benefitted from airing the program. Neither the complaint, nor the investigator's declaration, nor J & J Sports' amended motion and newly filed declaration contains evidence that defendants made a profit from the exhibition of the program.

Courts in this district have awarded enhanced damages in the range of $5,000 to $10,000 where the evidence has shown that the defendants profited from the exhibition. *See Kim Hung Ho*, 2012 WL 146634 (awarding $10,000 where a defendant had thirteen forty-inch LCD televisions and 115-125 patrons present and had been sued for the

unlicensed exhibition of such programming at least once before); *Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. 05-cv-05017 RMW, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages and $5,000 in enhancement damages when 40 persons were present at the establishment and patrons were charged a ten dollar cover charge); *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-cv-05713 EJD, 2011 WL 6294115 (N.D. Cal. Dec. 14, 2011) (awarding $10,000 due to the "egregious nature of the violation."). In contrast, where commercial gain is unclear, either because no cover charge was imposed, or because the establishment did not increase the prices for food and beverages, or because the plaintiff had not shown that the patrons were there solely to watch the match, enhanced damages have not been awarded. *See, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000) ("[T]he mere assertion that defendant acted willfully is insufficient to justify enhanced damages.") (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

Nor do the facts justify an enhanced damages award calculated by multiplying the commercial fee by the average number of patrons. J & J Sports urges the Court to use this approach, as the court did in *J & J Sports Productions, Inc. v. Guzman*, No. 09-cv-05124 JF, 2010 WL 4055934 (N.D. Cal. Oct. 14, 2010), as an the alternative to the maximum award. Here, such an award would total $60,000. In *Guzman*, Judge Fogel found an enhanced damages award appropriate because the defendants had *three other* default judgments entered against them for similar violations. *Id.* at *3. Even considering that it was Guzman's fourth offense, Judge Fogel awarded only $34,400 in enhanced damages. As the Ninth Circuit stated in *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999), in which it vacated and remanded a district court's award of $80,400 in enhanced damages, "Depending on the circumstances, a low five figure judgment may be a stiff fine that deters, while a high five figure judgment puts a bar out of business." Accordingly, the Court finds no basis in the record to justify an enhanced damages award of $60,000 or $100,000. Furthermore, because J & J Sports has established only that defendants acted willfully, but not that they benefited from the exhibition, the

1  Court finds an award of enhanced damages under § 605 inappropriate.

2    Finally, J & J Sports requests $1,200 in conversion damages. Under California Civil Code § 3336, damages for conversion are based on the value of the property at the time of the conversion. J & J Sports claims that the value of a license to exhibit the program is $1,200. Accordingly, the Court finds that J & J Sports is entitled to recover the $1,200 licensing fee. *See G & G Closed Circuit Events, LLC v. Kim Hung Ho*, No. 10-cv-05716 EJD, 2011 WL 6217598, at *2 (N.D. Cal. Dec. 14, 2011) (awarding conversion damages in addition to statutory damages under § 605).

## IV. CONCLUSION

The Court recommends that the District Court grant J & J Sports' motion for entry of default judgment against defendants and that it award to J & J Sports $1,200 in damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $1,200 in damages under California Civil Code § 3336, for a total of $2,400. The parties may file objections to this order under Federal Rule of Civil Procedure 72(a) within fourteen days of the date this order is filed.

IT IS SO ORDERED.

Date: November 13, 2012

_____
Nathanael M. Cousins
United States Magistrate Judge